## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
===============================
                              :
AUCTUS FUND, LLC,             :
                              :
        Plaintiff,            :
                              :
        v.                    :      Civil Action No. _____
                              :
ANVIA HOLDINGS CORP.,         :
                              :
        Defendant.            :
                              :
===============================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.    The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, Anvia Holdings Corp., (hereinafter the "Company" or "ANVV"), in the above-captioned action.   The Plaintiff's allegations, as set out herein, are asserted for such damages arising from, and resulting from, the Defendant's violations of the following:

> a)    Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

> b)    Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

> c)    breach of contract;

> d)    breach of implied covenant of good faith and fair dealing;

> e)    unjust enrichment;

f) breaches of fiduciary duty;

g) fraud and deceit;

h) negligent misrepresentation; and/or

i) the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11.

2. The Plaintiff further alleges that, as a result and as caused by the Defendant's breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendant's coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3. The Plaintiff respectfully requests that its causes of action against the Defendant proceed to a trial by jury, that a judgment be entered on all Counts against the Defendant and that Auctus be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4. The Plaintiff, Auctus Fund, LLC is a limited liability company, duly organized in the State of Delaware, with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5. Upon information and belief, the Defendant, Anvia Holdings Corp., Inc., is a corporation, duly organized in the State of Delaware, with a principal place of business located at 100 Challenger Road, Suite 830, Ridgefield Park, NJ 07660.

### III. JURISDICTION AND VENUE

6.     The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and under the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a, *et seq.* (hereinafter the "Securities Act"), and under the Exchange Act, 15 U.S.C. §§ 78a, *et seq.*

7.     The Plaintiff contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Plaintiff Auctus and Defendant ANVV agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business and is where the violative conduct described herein is alleged to have occurred.

8.     This Court has personal jurisdiction, generally and specifically, over the Defendant by express terms of the Agreement, and as arising from its extensive business contacts, generally over time and specifically, in its business dealings with Plaintiff Auctus within the Commonwealth of Massachusetts.

### IV. FACTUAL BACKGROUND

#### A.     The Auctus / ANVV Transactions Documents and Contracts

9.     On or about March 15, 2019, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Purchase Agreement" or the "SPA") and a certain Convertible Promissory Note (hereinafter the "Note" and, with the SPA and other documents, collectively hereinafter the "Transaction Documents"), thereby entering into a contract with Plaintiff Auctus for its investment in ANVV.  *See* Purchase Agreement, attached, restated and

incorporated by reference herein as **Exhibit A**; Note, attached, restated and incorporated by reference herein as **Exhibit B**.

10.     A review of the Plaintiff's Transaction Documents reveals that the Note has a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, the Defendant's debt obligations, in whole or in part, into freely traded shares of ANVV common stock. Under the terms and conditions of the Transaction Documents, the Plaintiff has, and has had, a contractual right to convert at a price for ANVV common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

11.     By the Transaction Documents, the Defendant was also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Defendant to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Note.

12.     Thus, in detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff. Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund, and omitted material information while having a duty of disclosure, regarding the Company, and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Securities Exchange Act of 1934, *as amended*, and Rule 10b-5, as promulgated thereunder, and the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §§101, *et seq., as amended*.

**B.**     **Defendant's Misrepresentations and Omissions of Material Facts and**
 <u>**Securities Fraud in Connection with Offer, Purchase and Sale of Securities**</u>

13.     The Plaintiff asserts and alleges that the Defendant misrepresented, omitted and

failed to provide material facts to Auctus in connection with its investments and in the offer,

purchase and sale of securities, and especially with respect to the business, finances, operations

and other material matters relating to the Defendant, including but not limited to certain corporate

transactions of Defendant ANVV.

14.     As an example of such material misrepresentations, omissions and/or misleading

or false information, on or about March 6, 2019, the Defendant published and disseminated certain

statements, entitled, *"Anvia Holdings Corporation- ANVV Highlights Corporate Vision and*

*Growth Strategy as Global Platform for Personal & Business Growth Company,"* which provided,

in pertinent part, as follows:

> **Glendale, California, March 06, 2019** (GLOBE NEWSWIRE) -- Anvia Holdings
> Corporation **(OTCQB: ANVV)** (the "Company" or "Anvia Holdings") today
> provided this report highlighting its corporate vision and growth strategy in the
> rapidly expanding multi-billion-dollar global self and corporate improvement
> marketplace.
>
> Anvia Holdings (ANVV) is a global technology for self and business improvement
> company. The company has acquired and developed a number of proprietary
> software, mobile applications, learning and educational tools to help consumers and
> businesses improve and grow.  To achieve the vision of becoming the largest self
> and corporate improvement global company by 2025 the company launched a
> multipronged expansion strategy of acquiring and/or developing businesses
> focused on several key aspects of self and business improvement market.
>
> Ali Kasa, CEO and President of Anvia Holdings, commented, "We are pleased to
> be gaining momentum with our planned growth and acquisition strategy in the self
> and business improvement space.  As of December 31, 2018 we acquired 11
> companies in Australia, Malaysia and The Philippines. The combined revenues of
> these acquisitions are USD 8 Million per annum and each of these acquisitions
> expands and or completes the infrastructure to make Anvia Holdings a global player
> in the self and business improvement space. The company has built a pipeline of
> new acquisitions to increase the revenues and market share in current markets and
> plans to enter the US market within 2019."

15.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

16.     As a further example of such material misrepresentations, omissions and/or misleading or false information, on or about, March 12, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation- ANVV Announces Service Agreement with Velt International Group, Inc -VIGC,*" which provided, in pertinent part, as follows:

**Glendale, California, March 12, 2019 (GLOBE NEWSWIRE)** -- Anvia Holdings Corporation (**OTCQB: ANVV**) (the "Company" or "Anvia Holdings") today announced that on March 5, 2019 it has signed a service agreement with Velt International Group, Inc to develop and implement the transformation strategy of the Velt.

Under the terms of the agreement Anvia Holdings shall study, develop and oversee the transformation strategy of Velt International. Anvia shall receive 3 Million shares of Velt International Group, Inc valued at USD 750,000.00 based on the share price of Velt on March 5. Mr. Ali Kasa who is the President and Chief Executive officer of Anvia Holdings has been appointed interim President and Chief Executive Officer of Velt International. He will step down as the President and Chief Executive Officer after selecting and hiring the complete management team of Velt and establish a board of directors where he will serve as director and resign from the interim position as President and Chief Executive Officer of Velt. Ali Kasa, CEO and President of Anvia Holdings, commented, "The agreement with Velt International Group, Inc will enable Anvia and its subsidiaries to show case our capabilities to transform and grow companies by utilising our corporate services that offer a unique blend of software, consulting, coaching and learning into a single service offering. We are confident of what we offer and that is why we accepted the responsibility to take ownership of the project and personally serve as the interim director and officer of Velt."

Patricia Yeoh, Director and Secretary of Velt International Group, Inc, added "the total service offerings of Anvia, including the approach and the dedication of the team made our shareholders appoint Anvia to lead our transformation efforts."

17.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

18.     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about May 21, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation (ANVV) Reports 2019 First Quarter Financial Results and Business Highlights,*" which provided, in pertinent part, as follows:

"**Ridgefield Park, NJ, May 21, 2019 (GLOBE NEWSWIRE)** -- Anvia Holdings Corporation (OTCQB: ANVV) (the "Company" or "Anvia Holdings") a global technology and education service company today reported financial results and business highlights for the first quarter of 2019 and filed its quarterly report on Form 10-Q for the three months ended March 31, 2019 with the Securities and Exchange Commission on May 20, 2019.

**2019 Business Highlights:**
- Filed application to uplist company on Nasdaq
- Appointed five directors to its board out of which four are independent directors
- New Board Members include: Reyad Fezzani, Pól Ó Móráin, Dr. James G. Shanahan, Aleem Sheikh, James Kennett
- Executed a definitive agreement to acquire all of the issued and outstanding shares of Host Group of Companies Pty Ltd (Host Networks), an Australian data centre and hosting service based in Brisbane and Xseed Pty Ltd, an Australian Vocational Education Provider based in Melbourne.
- 

"It has been a very productive start to 2019, with the addition of 5 new directors, the acquisition of Host Group and Xseed, as well as the filing of the application to list our shares on Nasdaq stated Anvia President Mr. Ali Kasa.

**First Quarter 2019 Financial Results:**
- Total assets reported for Q1 was $5,225,618
- Revenues in Q1 increased to $1,678,069 vs. $17,839 in 2018
- Net loss reported in Q1 was $8,397,794
- Total liabilities reported in Q1 was $14,214,066 due to current financial option contingencies
- Gross profit reported in Q1 was $1,628,193 vs. $13,400 in the previous year

**Anticipated Upcoming Milestones:**
- Q2 2019:  Revenues projected to increase to above $ 2 Million USD
- Q3 2019:  Revenues projected to increase to above $ 3.5 Million USD
- Q4 2019:  Revenues projected to increase to above $ 4 Million USD

"The focus for the current quarter is to further strengthen the revenue and profitability of the company. We shall do so by continuing to enhance the internal controls and make few more acquisitions" added Mr. Kasa."

19.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

20.     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about June 3, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation Acquires Majority Stake of AGE Legal Group, an Australian Legal and Compliance Practice*," which provided, in pertinent part, as follows:

"**Ridgefield Park, NJ, June 03, 2019 (GLOBE NEWSWIRE)** -- Anvia Holdings Corporation (**OTCQB: ANVV**) (the "Company" or "Anvia Holdings") today announced that it has executed a definitive agreement to acquire 51% majority stake of the issued and outstanding shares of AGE Legal Pty Ltd and Legal Management Services Pty Ltd, an Australian legal and compliance practice service based in Queensland.

Under the agreement Anvia Holdings through its fully owned subsidiary Anvia (Australia) Pty Ltd has acquired 51% of AGE Legal and Legal Management Services' outstanding shares for AUD 500,000 about USD 348,000, where the shareholders of AGE Legal and Legal Management Services shall be paid in shares of Anvia Holdings based on closing price on 31 May 2019.

Adrian Edwards, CEO of AGE Legal, said "We are pleased to have entered into this agreement with Anvia and are excited about the additional resources and capabilities that this gives us to grow our operations and capacity internationally, of specific interest, is the expansion into markets that have collectively been identified."

Anvia (Australia) Pty Ltd CEO, James Kennett, said, "adding AGE Legal and Compliance to our professional services portfolio is not just adding additional

revenues to the group, it will strengthen the compliance and internal controls of the group."

21.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

22.     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about June 10, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation to acquire Australian registered training organization, VocTrain Pty Ltd trading as Quality Automotive Training*," which provided, in pertinent part, as follows:

> "**Ridgefield Park, NJ, June 10, 2019 (GLOBE NEWSWIRE)** -- Anvia Holdings Corporation (OTCQB: ANVV) (the "Company" or "Anvia Holdings") today announced that it has executed a definitive agreement to acquire all of the issued and outstanding shares of VocTrain Pty Ltd, an Australian Registered Training Organization.
>
> Under the agreement Anvia Holdings through its fully owned subsidiary Anvia (Australia) Pty Ltd shall acquire 100% of VocTrain Pty Ltd outstanding shares for USD 560,000 (AUD 800,000), of which USD196,000 (AUD 280,000) will be paid in cash, and the balance will be paid in ordinary shares of Anvia Holdings Corporation. It is anticipated that Anvia shall fulfil all necessary pre-acquisition conditions including Departmental approvals to allow closing of the transaction in 10 business days.
>
> Tom Ziniak, CEO of VocTrain Pty Ltd, said "As the founder of Quality Automotive Training, it gives me great pleasure to know that the future of our company is secure and look forward to the growth opportunities that Anvia would afford us".
>
> Anvia (Australia) Pty Ltd CEO, James Kennett, said "adding VocTrain's automotive training operations and resources to our education services portfolio, enhances our existing automotive training offering, and solidifies our position in Australia as a major player in Education Services"

23.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

24.     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about June 12, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation Acquires Majority Stake of Myplanner Professional Services Pty Ltd, Australia's 28th largest Australian Financial Services Licensee in 2018*," which provided, in pertinent part, as follows:

> **Ridgefield Park, NJ, June 12, 2019 (GLOBE NEWSWIRE)** -- Anvia Holdings Corporation (OTCQB:ANVV) (the "Company" or "Anvia Holdings") today announced that it has executed a definitive agreement to acquire 95% majority stake of the issued and outstanding shares of the 28th largest Australian Financial Services licensee, Myplanner Professional Services Pty Ltd (Myplanner) based in Queensland, Australia.
>
> The agreement also included the acquisition of 100% stake of the issued and outstanding shares in the company, My Managed Portfolio Pty Ltd being the investment managed discretionary account service provided to more than 100 licenced financial advisers within the group.
>
> Under the agreement Anvia Holdings through its fully owned subsidiary, Anvia (Australia) Pty Ltd shall pay a total combined acquisition amount of AUD $4,381,305 for both Myplanner Professional Services Pty Ltd and My Managed Portfolio Pty Ltd outstanding shares.
>
> Included in the agreement and within the total purchase price, the vendors will be issued AUD $1,314,391 for shares within Anvia Holdings based on the aggregate closing price for the 30 days preceding the 11 June 2019.
>
> David Mardell, Managing Director of Myplanner, said "We are very excited to have entered into this agreement with Anvia. For me, it was a wonderful cultural fit between both the Anvia Group of Companies and Myplanner as we both have the desire to assist our existing advisers grow their businesses as well expanding our network of advisers around Australia."
>
> David Mardell also expanded to say that "We look forward to building upon our existing licensee offering and continue striving towards becoming the licensee of choice in the Australian Financial Services market. We believe that this partnership

with Anvia, with the use of their technology platforms, practice development and business coaching services, as well as their Registered Training Organisation businesses will provide Myplanner with a distinct advantage within the current environment and additional resources for strong growth in 2019 and beyond."

Anvia (Australia) Pty Ltd CEO, James Kennett, said, "adding Myplanner to our professional services portfolio is not just adding additional revenues to the group, it will strengthen our position in the Financial Services sector within Australia as well as compliment the existing businesses within the Anvia Group."

25.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

26.     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about June 26, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation acquires controlling interest in Australian insurance broker, Acquire Insurance Brokers Pty Ltd.*," which provided, in pertinent part, as follows:

"**Ridgefield Park, NJ, June 26, 2019 (GLOBE NEWSWIRE)** -- Anvia Holdings Corporation (OTCQB: ANVV) (the "Company" or "Anvia Holdings") today announced that it has executed definitive agreements to acquire controlling interest of Acquire Insurance Brokers Pty Ltd (the "**Company**" or "**Acquire**"), an Australian insurance broker based in the City of Gold Coast.

Under the agreements with several current shareholders in Acquire, Anvia Holdings through its fully owned subsidiary Anvia (Australia) Pty Ltd has acquired 60% of Acquire's outstanding shares for AU$107,790 (US$75,000), which shall be paid in cash, and AU$1,372,325 (US$954,864), which shall be paid in shares of Anvia Holdings based on $2.83 price per share, the average price for the last 30 days preceding the 25 June 2019.

Acquire's CEO, Nathan Wrobel, said "We are extremely pleased with this strategic investment by Anvia. The close association we now have with their portfolio of businesses will immediately enhance and grow our existing client base, and their broad range of resources and services will help us improve our operations and marketing".

> Anvia (Australia) Pty Ltd CEO, James Kennett, said, "The addition of Acquire is another positive step in our strategy to acquire and expand a complimentary professional services group, and will be beneficial to all our existing operations."

27.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

28.     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about June 27, 2019, the Defendant published and disseminated certain statements, entitled "*Anvia Holdings Corporation acquires controlling interest in Australian accounting firm, Accounting Business Solutions Pty Lt*d.," which provided, in pertinent part, as follows:

> "**Ridgefield Park, NJ, June 27, 2019 (GLOBE NEWSWIRE**) -- Anvia Holdings Corporation (OTCQB: ANVV) (the "Company" or "Anvia Holdings") today announced that it has executed a definitive agreement to acquire controlling interest of Accounting Business Solutions Pty Ltd (ABS), an Australian accounting business based in the City of Gold Coast.
>
> Under the agreement Anvia Holdings through its fully owned subsidiary Anvia (Australia) Pty Ltd has acquired 51% of ABS' outstanding shares for USD 106,641 (AU$153,000), which shall be paid in shares of Anvia Holdings.
>
> Marshini Thulkanam, CEO of ABS, said "I am very pleased to have entered into this agreement with Anvia and excited about this opportunity to be part of the leadership team as we expand this division of such a dynamic group".
>
> Anvia (Australia) Pty Ltd CEO, James Kennett, said "The inclusion of ABS' quality team and existing client base will bring synergies and additional resources to help us address the rapid growth we are experiencing. This is a key part of our strategy and will be beneficial to all our existing operations and will also enable cost savings across the group."

29.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

30.      Over a period of months, the Plaintiff and the Defendant negotiated as to the dispute, which had arisen between them relating to the Auctus investment in the Company.

31.      On or about August 21, 2019, the Company fraudulently induced the Plaintiff to execute a certain Payoff Agreement (hereinafter the "Payoff Agreement 1"). *See* Payoff Agreement 1, between Auctus Fund, LLC and Verus International, Inc., dated August 21, 2019, attached, restated and incorporated by reference herein as **Exhibit D.**

32.      Under Payoff Agreement 1, the Defendant agreed to pay Auctus $19,183.24 at execution, and the remainder of $240,000.000 on or before Friday August 30, 2019. Payoff Agreement 1 (Exhibit D), ¶ 1 at p.1.

33.      The Company immediately breached Payoff Agreement 1 and failed to pay Auctus the initial sum of $19,183.24.

34.      As a result, thereafter, on or about August 26, 2019, the Company fraudulently induced the Plaintiff to execute a certain Payoff Agreement (hereinafter the "Payoff Agreement 2"). *See* Payoff Agreement 2, between Auctus Fund, LLC and Verus International, Inc., dated August 26, 2019, attached, restated and incorporated by reference herein as **Exhibit E.**

35.      Under Payoff Agreement 2, the Defendant did, in fact, pay Auctus $15,183.24 at execution, and agreed to pay the remaining outstanding balance due and owing of $254,160.68 on or before Friday August 30, 2019. See Payoff Agreement 2 (**Exhibit E**), ¶ 1 at p.1.

36.      On or about August 21, 2019 and August 26, 2019 the Defendant fraudulently induced the Plaintiff to execute Payoff Agreements 1 and 2, while never intending to honor or perform its various obligations pursuant to the same.

37.      Defendant ANVV has committed fraud and has made material misrepresentations and omitted material information while having a duty to disclose the same to the Plaintiff, prior to

and in connection with the offer, purchase and sale of securities with Auctus, and in connection with the Inducement Transaction Documents and in connection with the Transaction Documents by which the Plaintiff invested hundreds of thousands of dollars in the Company.

38.     As a direct and proximate cause of the violations of the federal and state securities laws of the Defendant, Plaintiff Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### C.     Defendant's Events of Default and Breaches of SPA and Note

39.     Based upon the fraud and deceit and securities fraud by the Defendant the Plaintiff contends that it has a bona fide basis to prosecute claims on the Transaction Documents, and that the fraudulent release was void, whether ab initio or otherwise, and/or voidable.

40.     Thus, the Plaintiff asserts that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "Events of Default," of the Note. These Events of Default included, *inter alia*, breaches of following provisions of the Transaction Documents: a) Sections 1.3 (Authorized Shares); b) Sections 1.4(g) (Sub-penny conversion price); c) Section 1.4(h) (Failure to Deliver Common Stock prior to Delivery date); d) Section 2.8 (Non-circumvention); e) Section 3.1 (Failure to pay principal or interest); f) Section 3.2 (Failure to Honor Conversion); g) Section 3.4 (Breach of Agreement and covenants – Sections 2.8 of the Note (Non-circumvention) and 1.3 (Authorized Shares)); h) Section 3.5 (Breach of Representations and Warranties -Section 3(g) (SEC Documents; Financial Statements)) of that certain Securities Purchase Agreement (the "SPA") by and between ANVV and AFL dated March 15, 2019; i) Section 3.10 (Failure to Comply with the Exchange Act); and j) Section 4.14 (Failure to notify of Future Financing). Thereafter, it is undisputed that the Company incurred and/or caused several

Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Auctus Note. In addition, pursuant to Section 3.1, an Event of Default shall have occurred by the failure of the Company to pay the principal or interest when due on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**Exhibit B)** § 3.1. This Event of Default, together with others, have occurred and continue to occur.

41.     As a result of such Events of Default and the continuation of the same without cure, on or about August 6, 2019, Plaintiff Auctus delivered its Notice of Default on the March 15, 2019 Note (hereinafter the "Default Notice") to the Company. Since the delivery of the Notice of Default, the Company has failed to cure the same, which default continues to the present date. *See* Default Notice, attached, restated and incorporated by reference herein as **Exhibit C.**

42.     Upon the occurrence of an Event of Default under Section 3.1 of the Auctus Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3 of such Note, the Company is required to pay, and shall pay, Plaintiff Auctus the "Default Sum" (as defined therein), due under the Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent.. Thus, as of September 20, 2019, the Company owes Plaintiff Auctus, under the SPA and the Note, the Default Sum Totaling Four Hundred-Twenty-Four Thousand-Four Hundred –Sixty-Six and 53/100 (**$424,466.48)** Dollars (U.S.). *See* Auctus Schedule as of September 20, 2019, attached, restated and incorporated by reference herein as **Exhibit 1**. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

43.     In sum, the Defendant has committed securities fraud, unfair and deceptive trade practices, and has perpetrated a fraud and deceit upon the Plaintiff, which suffered as a consequence. Throughout, the Defendant has been unjustly enriched and converted the Plaintiff's

assets, causing it to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Defendant, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. <u>VIOLATIONS OF LAW</u>

## <u>COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS</u>

44.     The Plaintiff reasserts Paragraphs 1 through 43 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

45.     The Defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

a)      employed manipulative and deceptive devices and contrivances;

b)      employed devices, schemes and artifices to defraud;

c)      made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

d)      engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

46.     As a direct and proximate cause of the violations of the federal securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT II - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS

47.     The Plaintiff reasserts Paragraphs 1 through 46 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

48.     The Defendant violated Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq.*, *as amended*, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

49.      The Defendant recklessly and intentionally omitted disclosure of pertinent material facts in an attempt to make its previous statements appear to not be misleading.

50.     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT III – BREACH OF CONTRACT

51.     The Plaintiff reasserts Paragraphs 1 through 50 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

52.     Pursuant to the Security Purchase Agreement and the Note, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

53.     Pursuant to Payoff Agreement 1, the Defendant entered into a contract pursuant to which it agreed to make certain payments to Auctus as to its obligations under the SPA and the Note.

54.     Pursuant to Payoff Agreement 2, the Defendant entered into a contract pursuant to which it agreed to make certain payments to Auctus as to its obligations under the SPA and the Note.

55.     The Fund contends that the Defendant breached its various contracts with the Plaintiff by its conduct, as described herein.

56.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

57.     The Plaintiff performed its obligations under the Purchase Agreement, the Note, Payoff Agreement 1 and Payoff Agreement 2, and in good faith.

58.     The Defendant, by its conduct described herein, violated the Purchase Agreement and the Note, breaching its contract with the Plaintiff.

59.     As a direct and proximate cause of the Defendant's breaches of its contracts, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

### COUNT IV – BREACHES OF IMPLIED COVENANT OF GOOD FAITH-FAIR DEALING

60.     The Plaintiff reasserts Paragraphs 1 through 59 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

61.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the

contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

62.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had binding contracts and the Company has no legal basis, as a matter of law, to avoid its obligations under the Note or the damages, including but not limited to damages set forth pursuant to Section 3.10 of such Note which arose as a result from the breach of the Purchase Agreement and the Note.

63.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contracts, and statements made to the Plaintiff to induce it to enter into the contracts and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

64.     Under the covenant, the Defendant was obligated to a good faith performance of its obligations under the Purchase Agreement, the Note, Payoff Agreement 1 and Payoff Agreement 2 with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

65.     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

66.     As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer,

irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V – UNJUST ENRICHMENT

67.     The Plaintiff reasserts Paragraphs 1 through 66 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

68.     The Defendant illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

69.     The Defendant's actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

70.     The Defendant has been unjustly enriched by its actions, as described herein.

71.     As a direct and proximate cause of the Defendant's unjust enrichment, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY

72.     The Plaintiff reasserts Paragraphs 1 through 71 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

73.     A fiduciary relationship existed between the Plaintiff and the Defendant, requiring it to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As a fiduciary, the Defendant was required to maintain and protect the welfare of the Plaintiff.

74.     By engaging in the conduct described herein, the Defendant breached its fiduciary duties to the Plaintiff.

75.     As a direct and proximate cause of the Defendant's breach of fiduciary duty, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VII – FRAUD AND DECEIT

76.     The Plaintiff reasserts Paragraphs 1 through 75 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

77.     The actions of the Defendant described herein constitute fraud and deceit, including but not limited to the following:

> a)     the Defendant made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;
>
> b)     the Defendant made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and
>
> c)     the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

78.     As a direct and proximate cause of the Defendant's fraud and deceit, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII - NEGLIGENT MISREPRESENTATION

79.     The Plaintiff reasserts Paragraphs 1 through 78 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

80.     The conduct of the Defendant as described herein constitutes negligent

misrepresentation in that the Defendant negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

81.     As a direct and proximate cause of the Defendant's negligent misrepresentations, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IX - VIOLATIONS OF MASSACHUSETTS CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11

82.     The Plaintiff reasserts Paragraphs 1 through 81 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

83.     At all relevant times herein, the Defendant conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

84.     The conduct of the Defendant as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendant:

> a)      executed the Securities Purchase Agreement and the Note with full knowledge and understanding of the Defendant's obligations to the Plaintiff;

> b)      fraudulently induced the Plaintiff to invest in the Company and thereby breached its promise to repay the Plaintiff;

> c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

e)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

85.     As a direct and proximate cause of the Defendant's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)      Determine that the Defendant is liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendant, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendant is liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendant,  is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)      Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems necessary; and/or

K)      Any additional relief which this Honorable Court deems just and proper.


**THE PLAINTIFF, AUCTUS FUND, LLC,
<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**


Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,



_/s/  *Philip M. Giordano*_
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyziridis, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Email: skyziridis@reedgiordano.com

Dated: October 3, 2019